{¶ 1} Appellant Eric Cook appeals from his convictions for rape and patient abuse and sentence received in the Cuyahoga County Court of Common Pleas. He presents ten assigned errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Cook`s convictions and sentence. The apposite facts follow.
 {¶ 3} This case arises from events that allegedly occurred while Cook bathed the victim, a patient at the skilled nursing unit of Parma Community General Hospital ("PCGH"). On November 2, 2003, the victim entered PCGH suffering from numerous ailments, one of which was clostridium difficile, an ailment that causes diarrhea. During her stay at PCGH, the victim was too weak to use the restroom on her own and was incontinent.
 {¶ 4} In the early morning hours of November 23, 2003, the victim soiled herself and called for assistance. In his statement to police, Cook stated that he responded and began cleaning the victim according to procedure. Cook explained that he wrapped his fingers in peri-care cloths and cleaned the fecal matter off of her body. Cook initially denied any penetration of the victim`s vagina. However, he later admitted that she had fecal matter in her vagina and that his wrapped fingers penetrated her vagina about one-quarter inch in order to clean the area.
 {¶ 5} Later that morning, the victim soiled her self again and called for assistance. Pamela Peoples, a nurse`s assistant at PCGH, responded and began cleaning her. As Peoples began to clean her, Cook walked in and the victim became hysterical, waving her arms and screaming for Cook to leave. Cook asked Peoples what she was doing in the room and Peoples said that she was cleaning the patient. Cook insisted that he had already done so. According to Peoples, Cook appeared aggressive and continued to approach the victim. Peoples quickly finished cleaning the victim and left the room. She stated that she informed a supervisor regarding the confrontation.
 {¶ 6} Don Dietzel, the staff nurse on duty at the time, stated that he overheard a conversation about the confrontation between the patient and Cook and instructed Cook to not go back into her room. He then went into the victim`s room and asked, "You do not want Eric in the room?" To which she responded, "No."
 {¶ 7} At approximately noon on November 23, 2003, the victim`s daughter visited her mother. The daughter noticed her mother had not eaten her lunch and appeared "nervous" and "real edgy." Her mother told her a male nurse sexually abused her the previous evening by inserting a finger into her vagina while he cleaned her. The daughter relayed this information to the nurse on duty. The nurse told her supervisor, who then called the nurse in charge that day, Doris Schoenbeck, who was at home.
 {¶ 8} After receiving the phone call regarding the incident, Schoenbeck and Lorrain Garret, R.N., responded to the victim`s room to investigate the matter. The victim told the nurses that the "male aid had put his finger in her vagina while cleaning her up." After hearing this information, Schoenbeck and R.N. Diane Placko examined the victim and recorded the information in the requisite hospital records. Schoenbeck then contacted the Parma police to inform officers that there had been an incident of sexual abuse. PCGH discharged the victim the following day, and she returned to the nursing home where she had been staying.
 {¶ 9} Officer Tom Desmarteau responded to the complaint. He testified that the victim was "very upset," she had "an angry tone" as she spoke, her voice trembled, and she was "very concerned as to what took place." He stated that she seemed embarrassed. The victim gave a statement to the officer, but died prior to trial. As a result of the investigation, Cook was arrested for rape and patient abuse.
 {¶ 10} On July 7, 2004, the Cuyahoga County Grand Jury returned an indictment, charging Cook with one count of rape and one count of patient abuse. Cook pleaded not guilty and elected to try his case to the jury. Prior to the commencement of trial, the victim died on July 20, 2004. During the trial, the court allowed the victim`s daughter, Nurse Schoenbeck, and Officer Desmarteau to testify that the victim said Cook penetrated her vagina with his finger. The trial court also allowed Schoenbeck to read portions of the victim`s medical records that contained the daughter`s, Placko`s, and the victim`s statements.
 {¶ 11} On September 1, 2005, the jury returned guilty verdicts on both charges. On November 1, 2005, the trial court determined that Cook was a sexual predator and sentenced him to eight-years for rape and six months for patient abuse, to run concurrent with each other.
 Hearsay Statements {¶ 12} In his first assigned error, Cook argues the trial court improperly permitted the State to introduce testimony in violation ofCrawford v. Washington[2] Cook specifically finds error with the trial court`s decision to allow the daughter, Nurse Schoenbeck, and Officer Desmarteau to testify to the victim`s statement that Cook penetrated her vagina with his finger. Cook also finds error with the trial court`s decision to allow Schoenbeck to read portions of the victim`s medical records that contained the daughter`s, Placko`s, and the victim`s statements.
 {¶ 13} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."
 {¶ 14} In Crawford v. Washington, the United States Supreme Court examined the admissibility of out-of-court statements that are "testimonial." The Court held that in criminal cases, out-of-court statements that are "testimonial" in nature are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine.[3] "Nontestimonial" statements continue to be governed by the evidence rules on hearsay and by the U.S. Supreme Court`s decision in Ohio v. Roberts.[4]
 {¶ 15} Although the Court refused to set forth a "comprehensive definition of `testimonial`"[5] the Court concluded that "testimonial" statements include:
 "[e]x parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, * * * extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[6]
 {¶ 16} Therefore, a determinative factor in whether the statements are admissible is whether they constitute testimonial statements.
The Victim`s Statements to her Daughter
 {¶ 17} The Ohio Supreme Court in State v. Stahl[7] held that when determining whether statements were made under circumstances which would lead an objective witness to believe the statement would be available for use at a later trial, the focus is on the declarant`s expectation, not the questioner`s. The victim`s statement to her daughter that Cook inserted his finger into her vagina, was a nontestimonial statement. The victim made the statement to her daughter in confidence to relate why she was in an upset state of mind. Therefore, she was not making the statement with the belief it would be used in a later trial.
 {¶ 18} Because the statement is nontestimonial, it is admissible if it fits within a hearsay exception. We conclude the statement falls under the excited utterance exception to hearsay.
 {¶ 19} Pursuant to Evid.R.803(2), an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Ohio Supreme Court has set forth a four-part test to determine whether a statement qualifies as an excited utterance under Evid.R. 803(2).[8] The trial court must find the following:
 "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."[9]
 {¶ 20} At issue in this case is the second requirement that the statement be made while the declarant is still under the stress of the startling occurrence. The precise time of the occurrence is unknown, but judging from the evidence in the record, it took place in the early morning hours of November 23, 2003. The victim did not make her statement to her daughter until lunchtime that day, hours after the "startling occurrence."
 {¶ 21} There is no per se amount of time after which a statement can no longer be considered an excited utterance.[10] "The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore, the passage of time between the statement and the event is relevant but not dispositive of the question."[11]
 {¶ 22} In the present case, the daughter observed that her mother was "nervous," "real edgy," and had not eaten her lunch prior to telling her daughter what had occurred. Although, as Cook points out, this was well after the event, we find under the unique facts of the instant case, the victim`s statements constituted an excited utterance. This was not a situation where the victim left the scene of the offense and then later told someone what occurred. In the instant case, the victim remained in the same room and bed in which the offense occurred. She never separated herself from the environment. This, along with the fear that Cook could possibly reappear at any moment as he did shortly after the incident, and the victim`s vulnerable physical state due to her medical condition, could prolong the excitement of the startling event.
 {¶ 23} Given these circumstances, we cannot conclude that the decision of the trial court to admit the disputed testimony as an excited utterance was unreasonable.
The Victim`s Statement to Medical Personnel
 {¶ 24} The victim`s statements to Nurse Schoenbeck were made in a unique setting. The assault occurred on the hospital premises while she was a patient; therefore, Schoenbeck, as the supervising nurse on call at the time of the assault, conducted the initial internal investigation on behalf of the hospital. However, she also performed the medical exam on the victim to ascertain if she was injured. In this situation, Schoenbeck operated both as a supervisor conducting an internal investigation regarding a complaint against an employee, and a medical person administering aid to the patient. In such a situation, we conclude the victim`s statements to Schoenbeck were nontestimonial.
 {¶ 25} In State v. Stahl,[12] the victim`s statement to a nurse in an emergency room was deemed nontestimonial. The Ohio Supreme Court held "to a reasonable person, questioning by a nurse or other medical professional during an emergency-room examination would appear to serve a primarily health-care-related function."[13] The Court concluded this in spite of the fact the hospital required the victim to sign a form entitled "Consent for Forensic Exam and Release of Evidence." The Court explained that "it is true that the [hospital`s rape center] gathers forensic evidence for potential criminal prosecution, but its primary purpose is to render medical attention to its patients."[14]
Likewise, in the instant case, although Schoenbeck was investigating the assault, she also served the primary purpose of attending to the patient`s medical needs.
 {¶ 26} Moreover, Schoenbeck`s investigation of what occurred went towards gathering information for the hospital`s internal investigation of the matter and not for developing testimony against Cook. That is, she was not collecting the statements for prosecutorial purposes, but for the hospital`s internal investigation and to assess the risk Eric Cook posed to patients, and the proper disciplinary procedure to be followed.
Statements Contained in Medical Record
 {¶ 27} Cook also contends that Schoenbeck should not have been permitted to testify to the statements by Nurse Placko, the victim, and the victim`s daughter, which were contained within the victim`s medical records.
 {¶ 28} These statements are not testimonial as they detailed the assault for purposes of the victim`s treatment, not for the prosecution of Cook. The medical records were admissible because authenticated medical records are generally admissible at trial.[15] The records in the instant case were authenticated by the custodian of records for PCGH. He testified that the records were kept in the ordinary course of business; therefore, the records have an indicia of trustworthiness. Thus, we conclude the trial court did not err by allowing Schoenbeck to read the statements contained within the medical records.
 The Victim`s Statement to the Police {¶ 29} In Crawford, the United States Supreme Court made it clear that "statements taken by police officers in the course of interrogations are also testimonial even under a narrow standard."[16] In Davis v.Washington[17] the court further explained the rule as to statements made to police:
 "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."
 {¶ 30} In the instant matter, the record reveals that on November 23, 2003, Officer Desmarteau interviewed the victim about the matter. At that time, there was no ongoing emergency because the assault had occurred approximately 12 to 14 hours earlier. In response to the officer`s questions, the victim stated that the male nurse put his finger in her vagina.
 {¶ 31} This statement is obviously a "statement * * * taken by a police officer in the course of interrogations."[18] The victim undoubtedly made the statement while cognizant of the potential criminal liability that might result from it. Therefore, it is a testimonial statement.
 {¶ 32} The State insists that this statement was actually an excited utterance; however, we note that this does not render the testimonial statement admissible. The Crawford court held "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is that one the Constitution actually prescribes: confrontation."[19] Thus, a testimonial statement is not admissible even if it satisfies an exception to hearsay.
 {¶ 33} Although the court erred in allowing the officer to testify regarding the victim`s statement, we conclude the admission did not prejudice Cook because it was duplicative to the properly admitted testimony of the daughter and Schoenbeck. Nevertheless, this determination does not require reversal if no prejudice resulted and the error was harmless. "A violation of an accused`s right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused`s guilt to render improperly admitted statements harmless beyond a reasonable doubt."[20] Accordingly, Cook`s first assigned error is overruled.
 Other Acts Evidence {¶ 34} In his second assigned error, Cook argues the trial court erred by improperly allowing the State to introduce evidence of other acts.
 {¶ 35} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."[21] Accordingly, we proceed under an abuse of discretion standard. "The term `abuse of discretion` connotes more than an error of law or of judgment; it implies that the court`s attitude is unreasonable, arbitrary or unconscionable * * *."[22]
 {¶ 36} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 37} In the instant case, the State introduced the testimony of an eighty-one year old victim, who testified that Cook committed a similar assault against her when she was hospitalized in 1997 in a different facility. She testified that while bathing her, Cook inserted his finger into her vagina. This evidence was relevant because it showed Cook`s modus operandi. To be admissible to prove identity through a certain modus operandi or plan, the other acts evidence must be related to and share common features with the crime in question.[23] In the instant case, both the current victim and past victim were elderly women who were incapacitated and dependent on Cook`s care. In both cases, he vaginally penetrated them with his finger. Given the similarities between the two incidents, the evidence could also prove Cook`s digital penetration of the victim was not accidental.
 {¶ 38} We conclude given the similarities between the two incidents, the trial court did not abuse its discretion in allowing the evidence to be admitted. Accordingly, Cook`s second assigned error is overruled.
 Improper Voir Dire {¶ 39} In his third assigned error, Cook contends the trial court erred by conducting a competency exam of the prior victim, who was eighty-one years old, in front of the jury.
 {¶ 40} Cook challenged the prior victim`s competency. In response, the trial court, in front of the jury, questioned the witness regarding her ability to tell the difference between the truth and a lie. Cook argues this questioning should have taken place outside the purview of the jury.
 {¶ 41} We agree the better practice would have been to question the witness outside the hearing of the jury. However, because Cook failed to object to the questioning, he has waived all but plain error.[24] We do not conclude prejudicial error occurred. The trial court merely inquired whether the witness could tell the difference between the truth and a lie. This did not give her any more credibility than any of the other witnesses. Accordingly, Cook`s third assigned error is overruled.
 Insufficient Evidence for Rape Conviction {¶ 42} In his fourth assigned error, Cook argues his conviction for rape was not supported by sufficient evidence because there was no evidence he used force. We disagree.
 {¶ 43} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[25]:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[26]
 {¶ 44} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[27] in which the Ohio Supreme Court held:
 "An appellate court`s function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant`s guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 45} R.C. 2901.01(A) defines rape as "any violence, compulsion or constraint physically exerted by any means upon or against a person or thing." The force and violence necessary to commit the crime of rape is dependent upon the age, size, and strength of the parties and their relation to each other.[28] Other factors to consider include the vulnerability of the victim, dependence of the victim, and inherent power of the defendant.[29]
 {¶ 46} In the instant case, Cook was the caretaker of the victim, who was bedridden, elderly, and infirm. The victim and Cook were not equal in strength or age. Given these factors, the victim was unable to defend herself. Therefore, the force necessary to commit the crime of rape was minimal and less than might be required in relation to a younger, healthier woman. Accordingly, Cook`s fourth assigned error is without merit.
 Insufficient Evidence for Patient Abuse Conviction {¶ 47} In his fifth assigned error, Cook argues the evidence was insufficient to support his conviction for patient abuse because there was no evidence he harmed the patient.
 According to R.C. 2901.01(A)(4), "physical harm to persons means any injury, illness, or other physiological impairment regardless of its gravity or duration." The evidence indicated that the victim was extremely upset after Cook digitally raped her to the extent she became hysterical when he entered the room. She remained upset the following day and did not eat her lunch. We conclude a rational finder of fact could have concluded that Cook caused mental harm to the victim. Accordingly, Cook`s fifth assigned error is overruled.
 Failure to Preserve Written Statements {¶ 48} In his sixth assigned error, Cook argues the trial court failed to preserve the written statements of Pam Peoples, the victim`s daughter, and Officer Tom Desmarteau.
 {¶ 49} Crim.R. 16(B)(1)g) provides:
 "Upon completion of a witness` direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness` written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 "* * *
 "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 50} In the instant case, the daughter did not give a written statement. Therefore, Cook`s argument is inapplicable as to her. A review of the record also indicates that Cook`s counsel at trial examined People`s and Desmarteau`s statements and found them consistent with their testimony. There was also no indication that counsel was not given the entire statements. Crim.R. 16(B)(1)(g) only requires the statement be preserved if the defense attorney is not given the entire statement.[30] Therefore, the trial court did not violate the rule by failing to preserve the statements. Accordingly, Cook`s sixth assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 51} In his seventh assigned error, Cook contends his counsel was ineffective for failing to request a limiting instruction as to the prior victim`s testimony, and for stating in closing argument that it was "absolutely possible that [defendant] touched [the victim] * * * in an inappropriate manner," and that "it`s a hard call, okay, it`s a disgusting situation."
 {¶ 52} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington [31] UnderStrickland, a reviewing court will not deem counsel`s performance ineffective unless a defendant can show his lawyer`s performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer`s deficient performance.[32] To show prejudice, a defendant must prove that, but for his lawyer`s errors, a reasonable probability exists that the result of the proceedings would have been different.[33] Judicial scrutiny of a lawyer`s performance must be highly deferential.[34]
 {¶ 53} Counsel`s failure to request a limiting instruction may have been a strategical decision to avoid drawing further attention to Cook`s prior conduct. Courts must be highly deferential to counsel`s performance and will not second-guess trial strategy decisions.[35]
Moreover, even if counsel should have requested a limiting instruction, Cook must still demonstrate he was prejudiced by counsel`s failure to request one. We cannot conclude counsel`s failure to request the instruction caused the jury to find Cook guilty of the instant offenses. The State`s evidence indicated that penetration should never occur during such a cleaning absent an order from a doctor, and Cook admitted to penetrating the woman with his fingers.
 {¶ 54} With regard to the remaining claims, we note that counsel`s statement that it was possible that the touching occurred, was in the context of his reasonable argument the jury must carefully apply the legal definition of rape and penetration to the conduct in the instant case. Finally, we conclude counsel`s comment that "it`s hard to call, okay, it`s a disgusting situation" reflected counsel`s assessment of the case involving the victim`s incontinence and need to be cleaned. Moreover, such a comment, given the evidence against Cook, did not result in prejudice. Accordingly, Cook`s seventh assigned error is overruled.
 Manifest Weight of the Evidence {¶ 55} In his eighth assigned error, Cook argues that his conviction for rape was against the manifest weight of the evidence. We disagree.
 {¶ 56} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder`s verdict. As the Ohio Supreme Court held in State v. Thompkins [36]:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.` Blacks, supra, at 1594.
 "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 57} Cook argues that because he was working as a patient care attendant with the duty to clean patients, it was permissible for him to touch the victim`s genital area, and the slight penetration of her vagina did not constitute a criminal act.
 {¶ 58} We cannot conclude the jury lost its way. The undisputed evidence indicated that cleaning an incontinent patient should not involve penetration of the vagina. The testimony revealed that the victim inserted at least one finger into the victim causing her to cry out and order him to leave. When he returned to the room a short time later, she became hysterical and screamed for him to go away. The evidence further indicated that afterwards the victim was unable to eat and was "very edgy," "nervous," and "agitated." Accordingly, Cook`s eighth assigned error is overruled.
 Sexual Predator Classification {¶ 59} In his ninth assigned error, Cook contends the trial court erred by classifying him as a sexual predator. We disagree.
 {¶ 60} The Ohio Revised Code defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually-oriented offense and is likely to engage in the future in one or more sexually-oriented offenses."[37]
 {¶ 61} The burden of proof is on the State to show by clear and convincing evidence that the offender has been convicted of a sexually-oriented offense and that the offender is likely to engage in the future in one or more sexually-oriented offenses.[38] "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."[39]
 {¶ 62} In State v. Hills [40] we explained our standard of review of a sexual predator classification as follows:
 "[T]his court`s role is to determine whether the weight of the evidence supports the trial court`s decision. State v. Cook, supra, 83 Ohio St. 3d at 426; State v. Childs, 142 Ohio App. 3d 389, 755 N.E.2d 958 (Apr. 19, 2001). Decisions that are supported by competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons Coal v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273; State v. Cook, supra, 83 Ohio St. 3d 404; State v. Steele, supra, 2000 Ohio App. LEXIS 4046. Moreover, this court must be mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St. 2d 230, 39 Ohio Op. 2d 366, 227 N.E.2d 212, syllabus 1."
 {¶ 63} R.C. 2950.09(B)(3) provides the factors a trial court is to consider in making a classification determination. Although many of the factors set forth "involve what may be considered old conviction data which may be found in the court`s file," the list is not designed to be exclusive.[41] Rather, the trial court "shall consider all relevant factors."[42] In the instant case, the trial court found several of the R.C. 2950.09(B)(3) factors weighed heavily in favor of labeling Cook a sexual predator.
 {¶ 64} Although Cook did not have a prior criminal record, he did have prior incidents of the same nature. There were allegations that Cook had engaged in misconduct in 1997 while bathing the eighty-one year old witness who testified at trial. However, the court also noted that in 2001, a ninety-four year-old woman at Westlake Village Retirement Corporation had complained that Cook had called her "Sugar Bear" and touched her thigh, while telling her he would love to take her home. That same year, a woman at the Cleveland Clinic requested that Cook no longer care for her because of inappropriate conduct. Although these allegations were not admitted at trial, the court may rely on information not introduced at trial to determine a sexual predator classification.[43] These incidents indicated there was a pattern to Cook`s abuse of elderly patients and also to his violating his position of trust with patients pursuant to R.C. 2950.09(B)(3)(h).
 {¶ 65} The trial court also noted the victim was an older woman who could not defend herself and that this constituted "cruelty" pursuant to R.C. 2950.09(B)(3)(i). Although defendant did not use drugs to impair the victim, the victim had been given drugs for a medical condition, which could have impaired her ability to fend off Cook, which relates to R.C. 2950.09(B)(3)(e).
 {¶ 66} The results of the Static 99 test indicate that Cook is in the medium to low risk for reoffending. However, the court noted that Cook did not accept any responsibility for his actions.
 {¶ 67} Based upon our review of the record, we conclude the trial court`s decision to classify Cook as a sexual predator is supported by competent, credible evidence. Accordingly, Cook`s ninth assigned error is overruled.
 Considerations of Uncharged Conduct at Sentencing {¶ 68} In his tenth assigned error, Cook contends the trial court`s consideration of uncharged conduct in determining his sentence violated his Fifth Amendment due process rights, his Sixth Amendment right to have any disputed fact that would increase his penalty submitted to a jury, and his Eighth Amendment right against cruel and unusual punishment. We disagree.
 {¶ 69} In State v. Bundy, the court rejected this identical challenge, stating:
 "A court may consider a defendant`s uncharged yet undisputed conduct when determining an appropriate sentence. State v Scheer, 158 Ohio App.3d 432, 2004-Ohio-4792, citing State v. Steward, 4th Dist. No. 02CA43, 2003-Ohio-4082; State v. Shahan, 4th Dist. No. 02CA63, 2003-Ohio-6945 (stating that as in sentencing hearings, the Rules of Evidence do not apply to sexual predator determination hearings, so the trial court may consider reliable hearsay contained in a PSI.)
 "Likewise, unindicted acts or not guilty verdicts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence. State v. Williams, Cuyahoga App. No. 79273, 2002-Ohio-503."
 {¶ 70} In this matter, the uncharged conduct was not the sole basis for the sentence. When sentencing Cook, the trial court stressed Cook`s violation of trust with the victim, who was a patient in his care, and his preying upon her vulnerable position due to her medical condition. Accordingly, Cook`s tenth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant`s conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., CONCURS; ANN DYKE, P.J., CONCURS IN JUDGMENT ONLY.
 APPENDIX
Assignments of Error
 "I. The appellant`s state and federal constitutional right to confront the witnesses against him was violated when the testimonial and hearsay statements of the deceased alleged victim to the police and others were introduced against him."
 "II. Appellant`s due process right to a fair trial was violated by the introduction of unfairly prejudicial `other acts` evidence in violation of Evid.R. 404(B) and 403."
 "III. The trial court erred to the prejudice of the defendant when it conducted a voir dire of an eighty-one year old witness in the presence of the jury."
 "IV. The court`s decision finding the defendant guilty of forcible rape was not supported by sufficient evidence when there was no evidence of force whatsoever."
 "V. The court`s decision finding the defendant guilty of patient abuse was not supported by sufficient evidence when there was no evidence of physical harm whatsoever."
 "VI. The court erred in failing to preserve the witnesses` prior written statements for appeal after determining that no inconsistencies existed."
 "VII. The defendant was denied his right to effective assistance of counsel when defense counsel failed to protect his interests at trial."
 "VIII. The jury`s verdict was against the manifest weight of the evidence."
 "IX. The court`s decision finding the defendant to be a sexual predator was not supported by sufficient evidence and was against the manifest weight of the evidence."
 "X. The court`s consideration of disputed, uncharged conduct and the resulting increase in sentence violated appellant`s Fifth Amendment due process right, his Sixth Amendment right to have any disputed fact that would increase his penalty submitted to a jury and his Eighth Amendment right against cruel and unusual punishment."
[1] See appendix for assigned errors.
[2] (2004), 541 U.S. 36, 68, 124 S.Ct. 1354.
[3] Id. at 68.
[4] (1980), 448 U.S. 56, 100 S.Ct. (The court in Roberts held that out-of-court statements by unavailable witnesses may be admitted if they have adequate "indicia of reliability." Statements have indicia of reliability if they either fall within a well-established hearsay exception or have "particularized guarantees of trustworthiness." We note that Roberts has been overruled by the Supreme Court regarding its application to testimonial statements to which the right to confrontation applies. See, Crawford at 61; United States v.Gonzalez-Lopez (2006), U.S. , 126 S.Ct. 2557, 2562, 165 L. Ed.2d 409,417.)
[5] Id. at 68.
[6] Id. at 51-52.
[7] 111 Ohio St.3d 186, 2006-Ohio-5482 at paragraph two of the syllabus.
[8] See, Potter v. Baker (1955), 162 Ohio St.488; State v. Duncan
(1978), 53 Ohio St.2d 215.
[9] Duncan, supra.
[10] State v. Taylor (1993), 66 Ohio St.3d 295.
[11] Id. at 303.
[12] 111 Ohio St.3d 186, 2006-Ohio-5482.
[13] Stahl, 111 Ohio St.3d. at 199.
[14] Id. at ¶ 25.
[15] Hunt v. Mayfield (1989), 65 Ohio App.3d 349.
[16] Id. at 52.
[17] (2006), __ U.S. __, 126 S.Ct. 2266, 2273,165 L.Ed.2d 224.
[18] Id.
[19] 541 U.S. at 68-69.
[20] State v. Moritz (1980), 63 Ohio St.2d 150, at paragraph two of the syllabus. See, also, State v. Hubbard, Cuyahoga App. No. 83384, 2004-Ohio-4627.
[21] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus; State v. Bailey (1992), 83 Ohio App.3d 749.
[22] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[23] State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658.
[24] State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus
[25] (1978), 55 Ohio St.2d 261, syllabus.
[26] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[27] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[28] State v. Eskridge (1988), 38 Ohio st.3d 56; State v. Dye,82 Ohio St.3d 323, 1998-Ohio-234; State v. Stokes (1991),72 Ohio App.3d 735.
[29] Eskridge, at 58-59.
[30] State v. Taylor (May 24, 1999), 5th Dist. No. 1998CA00227.
[31] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[32] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[33] Id. at paragraph two of syllabus.
[34] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[35] State v. Tibbetts (2001), 92 Ohio St.3d 146, 166, 2001-Ohio-132;State v. Dixon, 101 Ohio St.3d 328, 2004-Ohio-1585.
[36] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[37] R.C. 2950.01(E); State v. Winchester (2001),145 Ohio App.3d 92.
[38] State v. Eppinger (2001), 91 Ohio St.3d 158.
[39]Id., citing Cross v. Ledford (1954), 161 Ohio St. 469, 477.
[40] Cuyahoga App. No. 78546, 2002-Ohio-497.
[41] State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247.
[42] R.C. 2950.09(B)(3).
[43] State v. Thompson (1999), Cuyahoga App. No. 73492; State v.Kennedy, 161 Ohio App.3d 127, 2005-Ohio-2461.