[Cite as *State v. Wiles*, 2018-Ohio-3077.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-69 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-214 |
| | : | |
| SHANNON M. WILES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Defendant-appellant, Shannon Wiles, appeals from a judgment of the Clark County Court of Common Pleas, following her guilty plea and sentence to one count of theft.   Finding no error, we affirm.

## I. Facts

{¶ 2} On April 28, 2017, Wiles was indicted on one count of theft in violation of R.C. 2913.02(A)(2), a fifth-degree felony. The charge arose from Wiles taking $1,305.07 from her employer, Northridge Mini Storage. Between November 2016 and February 2017, Wiles took money paid by customers and destroyed evidence of the transactions. She was fired for claiming to have worked hours that she did not work. Her theft was not discovered until later, when transaction documents, deposit records, and video surveillance were reviewed by the manager. Wiles pleaded guilty to the theft charge on June 27, 2017.

{¶ 3} Wiles's presentence investigation report (PSI) revealed that she had two prior misdemeanor convictions, one of which was a guilty plea to attempted misuse of a credit card in 2010. Also in the PSI were three arrest reports. One report was from the 2010 case. A second was from a 2014 case in which Wiles was charged with two counts of identity fraud for opening credit card accounts in the names of two elderly people for whom she was a caretaker. The third arrest report was from another 2014 case in which Wiles was charged with theft for forging checks on a bank account owned by a disabled man for whom she was a caretaker. The charges in the second two cases were dismissed for unclear reasons.

{¶ 4} Wiles claimed that financial problems relating to being laid off from a position

at Wright-Patterson Air Force Base in 2014 motivated her to commit the crime in this case. She also claimed that she only gave credits to customers and did not actually take any money. But according to the PSI, Wiles admitted taking money that had been paid by customers. The trial court questioned Wiles about the 2010 case and the two 2014 cases. She disputed the facts of all three cases.

{¶ 5} The trial court imposed mandatory community control and a six-month jail term. Wiles appealed.

## II. Analysis

{¶ 6} Wiles presents two assignments of error for our review, both targeting her sentence. The first challenges the six-month jail term, and the second challenges the trial court's consideration of the dismissed criminal cases.

{¶ 7} "R.C. 2953.08(G)(2) is the appellate standard of review for felony sentences." *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 5, citing *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence, or may vacate the sentence and remand the matter to the sentencing court for resentencing, if the appellate court clearly and convincingly finds that the record does not support certain statutory findings made by the sentencing court or that the sentence imposed is contrary to law. *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2016-Ohio-8078, ¶ 9.

### A. The six-month jail term

{¶ 8} The first assignment of error states:

The Trial Court Erred to the Prejudice of Ms. Wiles When It Imposed a Six-Month Jail Sentence Despite Being Prohibited from Imposing a Six-Month

Prison Sentence.

**{¶ 9}** Wiles argues in this assignment of error that the trial court could not impose a jail term for a fourth- or fifth-degree, non-violent offense as a matter of law. We disagree.

**{¶ 10}** R.C. 2929.13(B)(1) concerns the sentence imposed on an offender who is "convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense." Division (B)(1)(a) of the statute requires the court to "sentence the offender to a community control sanction of at least one year's duration" (provided that the conditions listed in the division are satisfied). Community control is required unless one of the situations listed in division (B)(1)(b) exists, in which case the court has discretion to impose a prison term. Here, it is not disputed that community control was mandatory.

**{¶ 11}** Wiles contends that if community control is mandatory, a court may not impose a maximum jail term. She points out that if division (B)(1)(a) applies, the court may not impose a *prison* term. A *jail* term should not allowed either, Wiles argues, based on the policy behind R.C. 2929.13(B)(1). It used to be that R.C. 2929.13 gave courts discretion whether to impose a prison term for non-violent fourth- or fifth-degree felonies. In 2011, H.B. 86 amended the statute to make community control the default. Wiles says that the General Assembly made this change in an effort to reduce Ohio's prison population, relieving the burden on local resources. She notes that, to the "overriding purposes" sentence in R.C. 2929.11(A), H.B. 86 added, "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Wiles says that this means that courts are required to consider jail overcrowding in their sentencing decisions. So allowing courts

to impose jail terms, she says, is contrary to the legislative purpose behind the changes made by H.B. 86. According to Wiles, the Clark County jail, where she would serve her term, is critically overcrowded, and the trial court here should have considered that as a factor in its sentencing decision.[1]

{¶ 12} We do not agree that the trial court here was prohibited from imposing a six-month jail term. R.C. 2929.13(B)(1)(a) required the court to impose a "community control sanction." "Serving time in a 'jail' as a part of community control sanctions," we have said, "is not the same as a prison sentence." (Citation omitted.) *State v. Williams*, 2d Dist. Montgomery No. 19026, 2002 WL 1332912, *2 (Jun. 14, 2002). "[A] 'jail' sentence is part of a community control sentence and not a prison sentence." *Id*. Under the community-control statutes, a six-month jail term is a community-control sanction: a sixth-month jail term is a "community residential sanction," R.C. 2929.16(A)(2), and a community-residential sanction is one form of community control, R.C. 2929.15(A)(1) (saying that if a prison term is not required, "the court may directly impose a sentence that consists of one or more community control sanctions authorized pursuant to section 2929.16 [community-residential sanctions], 2929.17 [nonresidential sanctions], or 2929.18 [financial sanctions] of the Revised Code"). Indeed, we have tacitly approved the imposition of a six-month jail term as part of community control. *See State v. Rigel*, 2d Dist. Clark No. 2016-CA-50, 2017-Ohio-6006, ¶ 52 (concluding that the trial court did not err by sentencing the defendant to "a term of six months in the county jail as a condition

---

[1] At the plea hearing the trial court stated, "If you're not sentenced to prison, the Court would place you on community control. Conditions could include among other sanctions time in the county jail, fines and restitution. Do you understand that?" Appellant has not raised whether her plea was voluntary or whether she was aware of a potential six-month jail sentence, and we do not address that issue.

of his community control" for fifth-degree felony possession of marijuana).

{¶ 13} During oral argument, counsel for Wiles argued that the case of *State v. Barnhouse*, 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, dictates a result here that the trial court was not permitted to impose a six-month jail sentence as a condition of community control when the court could not impose a similar prison sentence. We disagree.

{¶ 14} The issue in *Barnhouse* was whether jail sentences for community control violations could be consecutively imposed.

> [T]he trial court determined that it could not sentence Barnhouse to a prison term because it had failed to inform him of the specific prison sentence to which he would be subject were he to violate the conditions of his community control. Having concluded that it was barred from sentencing Barnhouse to prison, the trial court ordered continued community control and sentenced Barnhouse to serve two six-month jail terms pursuant to R.C. 2929.16(A). The trial court ordered Barnhouse to serve the jail terms consecutively.

*Id.* at ¶5. The Supreme Court indicated that, subject to certain exceptions, one of which is where a trial court makes consecutive-sentence findings and imposes consecutive, or prospectively consecutive, prison terms at sentencing, R.C. 2929.41 requires "a sentence of imprisonment to be served concurrently with any other sentence of imprisonment." The Court noted that county jail sentences are included in the word 'imprisonment' as that term is defined in R.C. 1.05. Moreover, the *Barnhouse* trial court had not only failed to impose any reserved sentence if the defendant violated community control, it did not

make any consecutive sentence findings. Most importantly, said the Court:

> [T]he six-month maximum jail sentence authorized by R.C. 2929.16(A)(2) is not an exception identified in R.C. 2929.41(A) and, therefore, is subject to the general rule that "a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment." R.C. 2929.41(A). Applying this rule to the instant case, we conclude that a trial court may not impose consecutive jail sentences under R.C. 2929.16(A)(2).

*Id.* at ¶16. We conclude *Barnhouse* holds only that the R.C. 2929.41(A) general rule for concurrent sentences prohibits consecutive jail sentences for community control violations and does not implicate whether a six-month jail sentence can be imposed as a community control sanction when a prison term is unavailable.

{¶ 15} We determine a trial court was not prohibited from imposing a six-month jail sentence on Wiles as part of her community-control sanction, regardless of whether she could be sentenced to prison in the first instance.

{¶ 16} The first assignment of error is overruled.

### B. Considering dismissed criminal charges

{¶ 17} The second assignment of error states:

The Trial Court Erred to the Prejudice of Ms. Wiles When It Relied Upon Dismissed Criminal Cases to Impose a Jail Sentence.

{¶ 18} Wiles argues that her sentence is unlawful also because the trial court considered dismissed criminal charges in its sentencing decision. This is plainly wrong.

{¶ 19} We have said that "a trial court may rely on 'a broad range of information' at sentencing." *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43,

quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.). "The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." (Citation omitted.) *Bowser* at ¶ 14. "Among other things, a court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement." (Citation omitted.) *Bodkins* at ¶ 43. Even " '[u]nindicted acts * * * can be considered in sentencing without resulting in error when they are not the sole basis for the sentence.' " *State v. Cook*, 8th Dist. Cuyahoga No. 87265, 2007-Ohio-625, ¶ 69, quoting *State v. Bundy*, 7th Dist. Mahoning No. 02 CA 211, 2005-Ohio-3310, ¶ 86. *Accord Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, at ¶ 7 (quoting the same).

**{¶ 20}** In this case, the trial court asked Wiles about three previous criminal cases. One case was brought against her in 2009 charging her with attempted misuse of a credit card. Wiles pleaded guilty to this charge and was convicted. When the trial court first asked her about this case, she did not remember it:

THE COURT: What about Mr. Gibson?

THE DEFENDANT: I'm sorry, who?

THE COURT: Mr. Gibson?

THE DEFENDANT: I don't know who that is, sir.

THE COURT: Someone you took care of.

THE DEFENDANT: Mr. Gibson?

THE COURT: Yes.

THE DEFENDANT: I don't know him. Mr. Gibson?

(Sentencing Tr. 6). But when the court asked her about the case again later, she admitted pleading guilty:

> THE COURT: All right. The 2009 case for which you were convicted of attempted misuse of a credit card, you were taking care of Mr. Gibson.
>
> You took his credit card and used it two different times, once at Walmart in Huber Heights, and once at Speedway, New Carlisle.
>
> The credit card was given to you to buy some things for Mr. Gibson, and that a Daisy Edwards was with you at the time, and she confirmed that you had the credit card and that you made the purchases at Walmart and Speedway. And you pled guilty to this.
>
> THE DEFENDANT: Yes, sir. I pled guilty to that, and I served my time on my probation, finished my community control, and paid restitution for that.
>
> THE COURT: You got a pretty good break on that because the prosecutor reduced that to a misdemeanor. All you had to do was pay a fine and restitution and that one went away.
>
> * * *

(Sentencing Tr. 12).

{¶ 21} The trial court also asked Wiles about a case brought against her in 2014 charging her with theft:

> THE COURT: * * * Is there anything, Miss Wiles, you would like to tell me about Mr. Belt?
>
> THE DEFENDANT: Mr. Belt? Not right offhand. He was a gentleman that I had taken care of there for a long time, and then accused me of stealing a

bunch of money out of his bank account, and it didn't happen.

He basically said that I walked in and took 20 some thousand dollars out of his bank account, and I didn't have access to his bank account let alone somebody not checking records with the bank or seeing me on file or camera at the bank doing such a thing so everything was dismissed.

* * *

THE COURT: * * *

And then Mr. Belt, Security Bank had a signature card with Richard Belt's signature on it. It came to light that it was not Mr. Belt's signature and his name—his signature was forged.

And that there were—his signature was forged again on checks and withdrawal slips that were cashed out of this account that he never opened.

* * *

THE DEFENDANT: It was all dismissed, sir.

(Sentencing Tr. 5-6, 12-13).

{¶ 22} Lastly, the trial court asked Wiles about another case brought against her in 2014 charging her with two counts of identity fraud:

THE COURT: Mr. and Mrs. Justice?

THE DEFENDANT: Yeah. They had said that I stole social security numbers from them, and it was actually my uncle that had did that, so all of that was dismissed as well. And I have not taken care of anybody or done any home health cares or anything since.

THE COURT: Why not?

THE DEFENDANT: Because people accuse you of stuff. I'm not—I'm not trying to go down that road. I've been down that road. I was facing serious, serious time in prison over that—all over allegations, and they had no proof that I did anything.

* * *

THE COURT: * * *

* * *

And then with the Justices, you were taking care of Mr. Justice and Mrs. Justice, and that you apparently opened credit card accounts in their name without their permission.

And that when the police were investigating and they were at the Justices' home, you pulled up, gave the police a false name; and when you were arrested, found to be in your possession were four credit cards belonging to Mr. and Mrs. Justice.

THE DEFENDANT: It was all dismissed, sir.

(Sentencing Tr. 6, 13).

{¶ 23} Wiles says that a court may consider charges dismissed in the case for which the defendant is being sentenced but not dismissed charges in other cases. Here, she says that the trial court's questions about the prior cases against her followed by the imposition of the six-month jail term suggest that the court believed that she was guilty of the dismissed charges and that she had gotten away with those crimes. The jail sentence, asserts Wiles, is improperly intended to punish her for those crimes.

{¶ 24} We disagree with the Appellant for at least three reasons. First,

"The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." (Citation omitted.) [*Bowser*, 186 Ohio App.3d 162, 2010–Ohio–951, 926 N.E.2d 714, ¶ 14] "Among other things, a court may consider hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement." (Citation omitted.) [*Bodkins*, 2d Dist. Clark No. 10–CA–38, 2011–Ohio–1274, ¶ 43.] A court may also consider "allegations of uncharged criminal conduct found in a PSI report[.]" (Citation omitted.) *Bowser* at ¶ 15. Accord *State v. Scheer,* 158 Ohio App.3d 432, 2004–Ohio–4792, 816 N.E.2d 602, ¶ 13 (4th Dist.) (finding that "[a] court may consider a defendant's uncharged yet undisputed conduct when determining an appropriate sentence").

*Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8. Second, when questioned, the Appellant did not deny that she had previously given a false name to police when she was found in possession of four unauthorized credit cards for a couple for whom she was caring. She likewise did not deny that a gentleman she was caring for had a forged bank signature card and forged checks on an account he never opened; her response was that she did not have access to the account. And third, there is no indication in the record that the trial court failed to accept her explanations and actually considered the facts underlying the dismissed charges in fashioning its sentence.

{¶ 25} On this record we cannot conclude that the trial court imposed the jail term in this case to punish Wiles for previous charges because they were dismissed. The court

stated in the judgment entry that it considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. That the court referred to facts underlying past dismissed charges against Wiles along with other considerations does not render the resulting jail sentence contrary to law.

{¶ 26} The second assignment of error is overruled.

### III. Conclusion

{¶ 27} We have overruled the two assignments of error presented. The judgment of conviction is therefore affirmed. We granted a stay on appeal only of the remainder of the jail sentence. That stay shall remain in effect until expiration of the time for filing an appeal to the Ohio Supreme Court and, if an appeal is filed, it shall continue while the case is pending in the Supreme Court.

. . . . . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., concurring:

{¶ 28} I agree with the majority that the trial court was not prohibited from imposing a six-month jail sentence.

{¶ 29} The majority correctly holds that *Barnhouse,* 102 Ohio St.3d 221, 2004-Ohio-2492, 808 N.E.2d 874, is not applicable to this case. In *Barnhouse,* the Ohio Supreme Court held that the trial court was prohibited from imposing consecutive jail sentences. The majority notes that, because the holding does not implicate whether a six-month jail sentence can be imposed as a community control, the case does not apply.

{¶ 30} However, the Ohio Supreme Court stated in *Barnhouse,* when defining the

word "imprisonment" that "the jail sentences imposed * * * rendered Barnhouse 'imprisoned' within the meaning of R.C. 1.05." *Id.* at ¶ 12. Even though the issue in *Barnhouse* dealt with consecutive sentences, the Court's statement that county jail sentences are included in the word "imprisonment" as defined in R.C. 1.05 is arguably applicable to this case.

{¶ 31} Nevertheless, R.C. 1.05 defines "imprisoned" as "unless the context otherwise requires, * * * a term of imprisonment, prison term, jail term, term of local incarceration, or other term." In this case, "the context" requires otherwise, which is why I agree that the trial court was not prohibited from imposing a six-month jail sentence. R.C. 2929.13(B)(1)(a) required the court to "sentence the offender to a community control sanction of at least one year's duration." According to R.C. 2929.15, "the court may directly impose a sentence that consists of one or more community control sanctions authorized pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code." R.C. 2929.16 specifically includes "a term of up to six months in a jail" as a community residential sanction. As a result, local jail time is permissible as part of Wiles's community control.

Copies mailed to:

Andrew P. Pickering
John A. Fischer
Hon. Douglas M. Rastatter